**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SEATTLE SPINCO, INC. and ENTIT SOFTWARE LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

1.      Plaintiffs Seattle SpinCo, Inc. and EntIT Software LLC (collectively, "Plaintiffs") hereby allege as follows for this complaint for declaratory judgment of patent non-infringement, invalidity, and ineligibility against Defendants Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively, "Wapp" or "Defendants").

## THE PARTIES

2.      Plaintiff Seattle SpinCo, Inc. ("Seattle SpinCo") is a corporation organized and existing under the laws of Delaware having a principal place of business at 1140 Enterprise Way, Building F, Sunnyvale, California 94089.

3.      Plaintiff EntIT Software LLC ("EntIT Software") is a limited liability company organized and existing under the laws of Delaware having a principal place of business at 1140 Enterprise Way, Sunnyvale, California 94089.

4.      Seattle SpinCo is an indirect, wholly owned subsidiary of Micro Focus International plc, a public limited company organized under the laws of England and Wales, United Kingdom, and having a principal place of business in Berkshire, England, United Kingdom.  EntIT Software is a wholly owned subsidiary of Seattle SpinCo.

5.      According to its allegations in a complaint ("Texas Compl.," attached hereto as Ex. BB) filed on July 2, 2018, in the U.S. District Court for the Eastern District of Texas in the case titled *Wapp Tech Limited Partnership et al. v. Micro Focus International Plc*, Case No. 4:18-cv-00469-ALM, D.I. 1 (the "Texas Suit"), Defendant Wapp Tech Limited Partnership is a Delaware limited partnership organized and existing under the laws of the state of Delaware, and its registered agent for service of process in Delaware is Corporations & Companies, Inc. (CorpCo), 910 Foulk Road, Suite 201, Wilmington, Delaware 19803.  Texas Compl. ¶ 4.

6.      According to its allegations in the complaint filed in the Texas Suit, Defendant Wapp Tech Corp. is a body corporate organized and existing under the laws of the Province of Alberta, Canada, and its registered agent for service of process in Delaware is Corporations & Companies, Inc. (CorpCo), 910 Foulk Road, Suite 201, Wilmington, Delaware 19803.  Texas Compl. ¶ 5.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1338(a) (any Act of Congress relating to patents), and 2201 and 2202 (declaratory judgment).

8.      This Court has personal jurisdiction over Wapp Tech Limited Partnership at least because Wapp Tech Limited Partnership alleged in the Texas Suit that it is organized under the laws of Delaware and has a registered agent for service of process in Delaware.  Texas Compl. ¶ 4.

9.      This Court has personal jurisdiction over Wapp Tech Corp. at least because Wapp Tech Corp. alleged in the Texas Suit that it has a registered agent for service of process in Delaware and that it and Wapp Tech Limited Partnership together "are the owner of all right, title and interest in and to" the Patents-in-Suit (as defined *infra* ¶ 11).  Texas Compl. ¶¶ 5, 30–32.

The original assignee named on each of the Patents-in-Suit is Wapp Tech Corp.  The online portal for the U.S. Patent & Trademark office does not provide records of any recorded assignments for any of the Patents-in-Suit.  Thus, on information and belief, Wapp Tech Corp. entered into an arrangement with what Wapp Tech Corp. alleges is a Delaware entity, Wapp Tech Limited Partnership, for the purpose of asserting the Patents-in-Suit against Micro Focus International plc and other entities.  Additionally, Wapp Tech Corp. filed the Texas Suit based on allegations of patent infringement involving products developed, marketed, and sold by at least EntIT Software, *see infra* ¶¶ 11–27, which is organized and existing under the laws of Delaware and which is a wholly owned subsidiary of Seattle SpinCo, Inc, also a Delaware entity.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b), at least because, according to their allegations in the Texas Suit, Wapp Tech Limited Partnership resides in Delaware and Wapp Tech Corp. is a foreign entity.  Texas Compl. ¶¶ 4–5.

## FACTUAL BACKGROUND

11.     On July 2, 2018, Wapp filed its complaint in the Texas Suit against Micro Focus International plc.  In its complaint, Wapp alleged that Micro Focus International plc has infringed U.S. Patent Nos. 9,971,678 (the "'678 patent") (Ex. Y), 9,298,864 (the "'864 patent") (Ex. Z), and 8,924,192 (the "'192 patent") (Ex. AA) (collectively, the "Patents-in-Suit") in connection with Micro Focus International plc's alleged "making, using (including for testing purposes), selling, and offering for sale systems for testing an application for a mobile device ('Accused System') including and not limited to the LoadRunner, Performance Center, StormRunner and Mobile Center software."[1]  Texas Compl. ¶¶ 59, 76, 95.  Wapp Tech Limited

---

[1]  Wapp's complaint in the Texas action purports to use the term "StormRunner" in reference to StormRunner Load.  *See, e.g.*, Texas Compl. ¶ 27; Ex. FF (Texas Compl., Ex. 4) (purported infringement claim chart for '678 patent) at 32.

Partnership and Wapp Tech Corp. claim to be co-owners of the Patents-in-Suit.  Texas Compl. ¶¶ 30–32.

12.     Claim charts attached to Wapp's complaint in the Texas Suit refer to the following "Accused System" in connection with claims 1–3, 26, 37, and 45 of the '678 patent, claims 1–3 and 8–12 of the '864 patent, and claims 1–3 of the '192 patent: "The Accused System (including HP LoadRunner, HP Performance Center, Shunra Network Virtualization, HP Network Virtualization engine, HP Network Virtualization for Mobile, HP Network Capture, and/or any Micro Focus products related to any of the foregoing)."[2]  Also, a claim chart attached to Wapp's complaint in the Texas Suit refers to "Micro Focus TruClient Native Mobile" in connection with claim 20 of the '864 patent and "Micro Focus Mobile Center" in connection with claim 29 of the '864 patent.[3]  Through these and other allegations in its complaint in the Texas Suit, Wapp has alleged that products sold under the names "LoadRunner," "Performance Center," "StormRunner Load," and "Mobile Center," as well as "Network Virtualization" when used in conjunction with certain such products, infringe the Patents-in-Suit.  Collectively, these products and functionalities are referred to herein as the "Accused Products."

13.     Wapp asserted in its complaint in the Texas Suit that "Micro Focus International plc is a corporation organized under the laws of the United Kingdom and maintains its principal place of business in Newbury, Berkshire, United Kingdom."  As a result, Wapp acknowledged

---

[2]  *E.g.*, Ex. FF (Texas Compl., Ex. 4) (purported infringement claim chart for '678 patent) at 2; Ex. GG (Texas Compl., Ex. 5) (purported infringement claim chart for '864 patent) at 2; Ex. HH (Texas Compl., Ex. 6) (purported infringement claim chart for '192 patent) at 2; *see also* the foregoing claim charts generally.

[3]  Ex. GG (Texas Compl., Ex. 5) (purported infringement claim chart for '864 patent) at 20, 27.

that it was aware as of the filing of its complaint that Micro Focus International plc was not organized or based in any jurisdiction of the United States.

14.     Publicly available information confirms that Micro Focus International plc is a foreign holding company with no ties to the state of Texas.  For example, publicly available filings on SEC / EDGAR demonstrate that Micro Focus International plc is a foreign entity.[4]

15.     Wapp asserted and acknowledged in its complaint in the Texas Suit that, prior to a "spin-out merger" involving Hewlett Packard Enterprise Company ("HPE"), the Accused Products were offered by HPE under the HPE brand.  Texas Compl. ¶¶ 18, 21, 35–36. Additionally, according to the complaint filed in the Texas Case, the spin-out merger was completed on September 1, 2017.  Texas Compl. ¶ 18.

16.     In its complaint in the Texas Suit, Wapp also alleged that "under the terms of a Separation and Distribution Agreement between HPE and Micro Focus [International Plc], dated September 7, 2016 governing the spin-out merger, HPE has twenty-four (24) months from September 7, 2016 to obtain licenses and sub-licenses for the benefit of Micro Focus International plc."  Texas Compl. ¶ 20.  In fact, however, the Separation and Distribution Agreement referenced by Wapp was not between HPE and Micro Focus International plc. Instead, the Separation and Distribution Agreement, which is publicly available, was between HPE and Seattle SpinCo.[5]  As the Separation and Distribution Agreement explains, Seattle

---

[4]  *See generally* https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001359711&owner=exclude&count=40&hidefilings=0 (showing filings by Micro Focus International plc, listing Newbury, Berkshire as its business and mailing address).

[5]  *See* Separation Agreement (Ex. A) (attached as Ex. 2.2 to 8-K Form of HPE (attached hereto as Ex. B) dated Sept. 7, 2016) at 1, available online at https://www.sec.gov/Archives/edgar/data/1645590/000119312516703457/d251902dex22.htm.

SpinCo acquired certain software business segments that had been owned by HPE, including HPE's software business segment responsible for the Accused Products; this was referred to as the "Seattle Transaction."[6]

17.      As noted, in the Seattle Transaction, HPE transferred its Software business segment, including the assets and liabilities of the Software business segment (subject to certain exceptions), to Seattle SpinCo and/or one or more of Seattle SpinCo's subsidiaries.[7]  More specifically, as a result of the Seattle Transaction, Seattle SpinCo (and/or one or more of its subsidiaries) assumed all liability arising from allegations of past, present, or future patent infringement that may be brought by third parties with respect to the Software business segment's making, selling, offering to sell, and/or importing of the Accused Products. Therefore, HPE divested itself of any liability arising from allegations of past, present, or future patent infringement that may be brought by third parties with respect to the Software business segment's making, selling, offering to sell, and/or importing of the Accused Products.

18.      Also, as part of the Seattle Transaction, Seattle SpinCo separated from HPE, such that Seattle SpinCo was no longer a subsidiary of HPE and had no affiliation with HPE.[8]

19.      According to a separate "Agreement and Plan of Merger" dated September 7, 2016, after Seattle SpinCo separated from HPE, Seattle SpinCo was merged into a wholly owned subsidiary of Micro Focus International plc, with Seattle SpinCo continuing as the surviving corporation.[9]

---

[6]  *See id.*
[7]  *See id.*
[8]  *See id.*
[9]  *See* Plan of Merger (Ex. C) (attached to 8-K Form of HPE (attached hereto as Ex. B) dated Sept. 7, 2016) at 1, available online at https://www.sec.gov/Archives/edgar/data/1645590/000119312516703457/d251902dex21.htm.

6

20.     Thus, upon the completion of the Seattle Transaction, and continuing after the merger between Seattle SpinCo and the subsidiary of Micro Focus International plc, Seattle SpinCo (and/or one or more of its subsidiaries) assumed all responsibility for making, importing, selling, or offering to sell the Accused Products.  Seattle SpinCo (and/or one or more of its subsidiaries) retained that responsibility since the completion of the Seattle Transaction.  Seattle SpinCo has not transferred that responsibility to Micro Focus International plc.

21.     EntIT Software is one such subsidiary of Seattle SpinCo.  EntIT Software was formerly named Hewlett Packard Software LLC.  EntIT Software develops, markets, and sells industry-leading enterprise computer software products.  These software products include a line of business that EntIT Software and Seattle SpinCo refer to as Application Delivery Management ("ADM").  The ADM line of business includes various products and features previously sold under the HPE name, including the Accused Products identified in Wapp's Texas Suit as alleged by Wapp.  *See* Texas Compl. ¶ 18 ("Following the spin-out merger, the term 'Micro Focus' replaced the term 'HPE' in the names of various software products.  For example, HPE LoadRunner became Micro Focus LoadRunner, HPE Performance Center became Micro Focus Performance Center, etc.").

22.     Publicly available information confirms that Wapp knew or should have known that Seattle SpinCo and EntIT Software, but *not* Micro Focus International plc, make, use, sell, offer for sale, or import the Accused Products.  Examples of such publicly available information include the following:

- According to publicly available sources, Seattle SpinCo, not Micro Focus International plc, holds the former HPE software business—including the Accused Products as part of the ADM line of business—through at least July 2, 2018, the date on which Wapp filed

its complaint in the Texas Suit.  For example, the "Micro Focus International Plc Interim Results for the Six Months Ended 31 October 2017," dated January 8, 2018, stated that Seattle SpinCo "holds the software business segment ('HPE Software') of Hewlett Packard Enterprise Company ('HPE'), in accordance with the terms of the previously announced Merger Agreement."[10]  Similarly, the "Micro Focus International Plc Interim Results for the Six Months Ended 30 April 2018," dated July 11, 2018, stated that Seattle SpinCo "holds the software business segment ('HPE Software') of Hewlett Packard Enterprise Company."[11]

- Publicly available filings on the United Kingdom government's "Companies House" website confirm that Micro Focus International plc is a holding company with no operating revenue.[12]

- As discussed *supra* ¶¶ 15–21, publicly available documentation describing the Seattle Transaction explained that the HPE software business segment that held the Accused Products was transferred to Seattle SpinCo, not to Micro Focus International plc, and that Seattle SpinCo was the surviving entity after its merger with an indirect subsidiary of Micro Focus International plc, Seattle MergerSub, Inc., as part of the Seattle

---

[10]  Six-Month Interim Results Ending October 31, 2017 (Ex. D), *available online at* https://investors.microfocus.com/media/1459/micro-focus-interim-results-to-31-oct-17-010818.pdf, at 1.

[11]  *See* Six-Month Interim Results Ending April 30, 2018 (Ex. E), *available online at* https://investors.microfocus.com/media/1479/micro-focus-international-plc-interim-results-30april18-final-website-update.pdf, at 31.

[12]  *See* Interim Financial Statements (Ex. F) at 3, *available online at* https://beta.companieshouse.gov.uk/company/05134647/filing-history?page=1 (posting interim financial statements).

Transaction.[13]  Wapp acknowledged that it was well aware of this documentation, as it purported to extensively analyze the agreements underlying the Seattle Transaction prior to filing its complaint in the Texas Suit and in fact made allegations based on those agreements.  *See, e.g.*, Texas Compl. ¶¶ 11, 18–21.

- Certain publicly available documentation for at least one of the Accused Products, including documentation for versions of Accused Products referenced by Wapp in its complaints, references EntIT Software in connection with the copyright notice and Seattle SpinCo in connection with the warranty.[14]

- A U.S. patent application originally assigned to Hewlett-Packard Development Company and then Hewlett-Packard Enterprise Development was assigned to EntIT Software LLC on September 1, 2017, according to PTO records.  *See* 14/374,785 Assignment History (Ex. I) at 1.  That application claims priority to PCT/US2012/024087, filed on February 7, 2012.  The fact of Hewlett Packard Enterprise Development's assignment to EntIT Software LLC was known or should have been known to Wapp, as Wapp spent four pages of its complaint in another case involving the same asserted Wapp patents addressing PCT/US2012/024087.  *See* Complaint, *Wapp Tech Limited Partnership et al v. Hewlett Packard Enterprise Co.*, Civil Action No. 4:18-cv-468 (E.D. Tex. July 2, 2018), ¶¶ 33–41.

---

[13]  *See* Agreement and Plan of Merger (Ex. C) at 1; Separation and Distribution Agreement (Ex. A) at 1; Micro Focus Prospectus (Ex. G) at 1, *available online at* https://www.sec.gov/Archives/edgar/data/1359711/000156761917001747/s001838x1_424b3 .htm#t167.

[14]  *See* StormRunner Load Help Center (Ex. H), *available online at* https://admhelp.microfocus.com/srl/en/2.9/Content/Resources/MasterPages/_rsc_Legal_Noti ces.htm; https://admhelp.microfocus.com/lr/en/12.56-12.57/dat/Readme1256.htm.

- Micro Focus International plc is not registered to do business in Texas and does not have a registered agent for service of process in Texas.

23.     The Accused Products are multi-functional software products or functionalities that relate generally to computer-related performance and/or functional testing.  For example, LoadRunner, Performance Center, and StormRunner Load may be used, among other things, to measure system behavior and performance under the load of many concurrent users.  Mobile Center may be used, among other things, to manage a group of mobile devices that may be used for application testing.  Network Virtualization, among other things, allows for certain simulation of network conditions between certain geographic locations when used in conjunction with LoadRunner and other products.

24.     Much of the technology underlying LoadRunner, Performance Center, and StormRunner Load was originally developed, marketed, and sold in the 1990s through the early 2000s by Mercury Interactive Corp. and/or other Mercury Interactive entities.[15]  Mercury Interactive also filed for and obtained various patents as early as 2002 on certain of its performance testing and related technology.[16]  Hewlett Packard ("HP"), a predecessor to HPE, acquired Mercury Interactive in 2006.

---

[15]  *See, e.g.*, Testing Report: Shunra\Storm STX-100 (Ex. J) (dated 2003); ADTmag, "Brave New Performance Management World" (Ex. K) (dated Jan. 1, 2004); ADTmag, "Product Briefs" (Ex. L) (dated June 1, 2004); InfoWorld, "Shunra Releases an Enterprise Testing Storm" (Ex. M) (dated Mar. 26, 2004).

[16]  *E.g.*, U.S. Patent No. 6,477,483, titled "Service for Load Testing a Transactional Server Over the Internet" (Ex. N) (filed Jan. 17, 2000, and issued Nov. 5, 2002); U.S. Patent No. 6,560,564, titled "System and Methods for Load Testing a Transactional Server Over a Wide Area Network" (Ex. O) (filed July 8, 2002, and issued May 6, 2003).  Notably, according to publicly available sources, both of those patents are currently assigned to EntIT Software LLC.  *See* https://patents.google.com/patent/US6477483B1/en?oq=6%2c477%2c483; https://patents.google.com/patent/US6560564B2/en?oq=6%2c560%2c564.

25.     Much of the technology underlying Network Virtualization was originally developed, marketed, and sold in the 1990s through the early 2000s by Shunra Software Ltd. and/or other Shunra entities.[17]  Shunra also filed for and obtained various patents, the applications for which were published as early as 1999, on certain of its network virtualization and related technology.[18]

26.     Shunra's Network Virtualization technology was developed, marketed, and sold as being integrated with LoadRunner at least as early as 2003.[19]  HP acquired Shunra's assets in 2014.

27.     Because Wapp has alleged patent infringement against Plaintiffs' corporate parent Micro Focus International plc in the Texas Suit with respect to the Accused Products, which are made and sold by Plaintiffs, an immediate, real, and justiciable controversy exists between Plaintiffs and Wapp regarding the Patents-in-Suit.

---

[17]  *See, e.g.*, Testing Report: Shunra\Storm STX-100 (Ex. J) (dated 2003); ADTmag, "Brave New Performance Management World" (Ex. K) (dated Jan. 1, 2004); ADTmag, "Product Briefs" (Ex. L) (dated June 1, 2004); InfoWorld, "Shunra Releases an Enterprise Testing Storm" (Ex. M) dated Mar. 26, 2004); Press Release, "Network Computing Magazine Tests with Shunra Software's Pre-emptive Infrastructure Performance Management Solutions" (Ex. P) (dated Apr. 28, 2003); "Shunra Network Tools and Sony PlayStation 2" (Ex. Q) (dated July 28, 2004).

[18]  *E.g.*, International Pub. No. WO 99/63439, titled "Apparatus and Method for Testing Network Applications" (Ex. R) (published on Dec. 9, 1999); U.S. Patent No. 7,647,399, titled "System and Method for Comparing a Service Level at a Remote Network Location to a Service Level Objective" (Ex. S) (filed Dec. 6, 2005); U.S. Patent No. 7,673,042, titled "System and Method for Comparing Service Levels to a Service Level Objective" (Ex. T) (filed Dec. 6, 2005); U.S. Patent No. 7,877,230, titled "System and Method for Attributing a Portion of a Response Time to an Element of a Virtual Network" (Ex. U) (filed Mar. 15, 2007).

[19]  *See, e.g.*, Testing Report: Shunra\Storm STX-100 (Ex. J) (dated 2003); InfoWorld, "Shunra Releases an Enterprise Testing Storm" (Ex. M) (dated Mar. 26, 2004).

## WAPP'S IDENTIFIED PATENTS

28.     The Patents-in-Suit are related and share the same sole named inventor, Donavan P. Poulin.  Each Patent-in-Suit purports to claim priority to U.S. Provisional Application No. 60/689,101, filed on June 10, 2005, and certain other patent applications.

29.     The '678 patent is titled "Systems Including Device And Network Simulation For Mobile Application Development."  The '678 patent was filed on December 23, 2014, and issued on May 15, 2018.  Wapp Tech Limited Partnership and Wapp Tech Corp. together purport to be the owner of all right, title, and interest in the '678 patent.  Texas Compl. ¶ 30.

30.     The '864 patent is titled "System Including Network Simulation For Mobile Application Development."  The '864 patent was filed on November 19, 2013, and issued on March 29, 2016.  Wapp Tech Limited Partnership and Wapp Tech Corp. together purport to be the owner of all right, title, and interest in the '864 patent.  Texas Compl. ¶ 31.

31.     The '192 patent is titled "Systems Including Network Simulation For Mobile Application Development And Online Marketplaces For Mobile Application Distribution, Revenue Sharing, Content Distribution, Or Combinations Thereof."  The '192 patent was filed on November 9, 2012, and issued on December 30, 2014.  Wapp Tech Limited Partnership and Wapp Tech Corp. together purport to be the owner of all right, title, and interest in the '192 patent.  Texas Compl. ¶ 32.

## FIRST CLAIM FOR RELIEF

## (Non-infringement of the '678 patent)

32.     Plaintiffs repeat and reallege the allegations in paragraphs 1–31 above as if contained herein.

33.     Wapp has alleged that Micro Focus International plc "without authorization has directly infringed at least Claim 1 of the '678 Patent, including making, using (including for

testing purposes), selling, and offering for sale systems for testing an application for a mobile device ('Accused System') including and not limited to the LoadRunner, Performance Center, StormRunner and Mobile Center software products."  Texas Compl. ¶ 59.  Wapp has specifically alleged infringement of claims 1–3, 26, 37, and 45 of the '678 patent by certain Accused Products, as discussed *supra* ¶ 12.

34.      Plaintiffs do not infringe any claim of the '678 patent, willfully or otherwise, either literally or under the doctrine of equivalents.

35.      For example, and not by way of limitation, each of claims 1–3, 26, 37, and 45 of the '678 patent requires a "system for testing an application for a mobile device" comprising, among other things, "a software testing interface configured to simultaneously visually simulate, via one or more profile display windows, a plurality of operator network characteristics including at least bandwidth availability indicative of performance of the mobile device when executing the application."  However, none of the Accused Products with respect to these claims meets these requirements of these claims.  For example, and not by way of limitation, certain Accused Products with respect to these claims may be used to test certain effects of load on a server computer, including as certain load could be generated by a mobile device, but the Accused Products with respect to these claims do *not* provide a system for testing an application on a mobile device as claimed and do *not* visually simulate certain items indicative of performance of a mobile device when executing an application as claimed.  *See, e.g.*, Ex. CC (Texas Compl. Ex. A, "Data Sheet:  HP LoadRunner and HP Performance Center with Shunra Network Virtualization," as attached by Wapp to the Texas Compl.) at 2 ("Often, performance testing fails to incorporate the significant impact that *mobile applications can have on the overall enterprise system*."); *id.* at 3 ("Using the mobile protocols, the performance testing team is able to capture

mobile traffic and *generate realistic mobile load on the system under test*."); Ex. DD (Texas Compl. Ex. B, "Data Sheet:  HP Network Virtualization for Mobile," as attached by Wapp to the Texas Compl.) at 4 ("You can test, validate, remediate, and achieve mobile app optimization before deployment to verify that your *back-end capacity* and end-user experience requirements are met before deployment.").  Moreover, testing a server computer with load is different from testing an application for a mobile device.  By way of further example, and not by way of limitation, the LoadRunner interface is *not* an interface to test software as claimed.  *See, e.g.*, Ex. EE (Texas Compl. Ex. G, "Data Sheet:  LoadRunner," as attached by Wapp to the Texas Compl.) at 3–4 (depicting certain visual interfaces in connection with LoadRunner, none of which is an interface for testing an application for a mobile device).

36.     An actual case or controversy exists between the parties concerning Plaintiffs' alleged infringement of the '678 patent.  Plaintiffs are entitled to a declaratory judgment that they have not infringed and are not infringing the '678 patent.

## SECOND CLAIM FOR RELIEF

### (Non-infringement of the '864 patent)

37.     Plaintiffs repeat and reallege the allegations in paragraphs 1–36 above as if contained herein.

38.     Wapp has alleged that Micro Focus International plc "without authorization has directly infringed at least Claim 1 of the '864 Patent, including making, using (including for testing purposes), selling, and offering for sale systems for testing an application for a mobile device ('Accused System') including and not limited to the LoadRunner, Performance Center, StormRunner and Mobile Center software products."  Texas Compl. ¶ 76.  Wapp has specifically alleged infringement of claims 1–3 and 8–12 of the '864 patent by certain Accused Products,

claim 20 of the '864 patent by certain Accused Products, and claim 29 of the '864 patent by certain Accused Products, as discussed *supra* ¶ 12.

39.     Plaintiffs do not infringe any claim of the '864 patent, willfully or otherwise, either literally or under the doctrine of equivalents.

40.     For example, and not by way of limitation, each of claims 1–3 and 8–12 of the '864 patent requires a "system for testing an application for a mobile device" comprising, among other things, "software configured to simulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application."  However, none of the Accused Products with respect to these claims meets these requirements of these claims.  For example, and not by way of limitation, certain Accused Products with respect to these claims may be used to test certain effects of load on a server computer, including as certain load could be generated by a mobile device, but the Accused Products with respect to these claims do *not* provide a system for testing an application on a mobile device as claimed and do *not* simulate certain items indicative of performance of a mobile device when executing an application as claimed.  *See, e.g.*, Ex. CC (Texas Compl. Ex. A, "Data Sheet:  HP LoadRunner and HP Performance Center with Shunra Network Virtualization," as attached by Wapp to the Texas Compl.) at 2 ("Often, performance testing fails to incorporate the significant impact that *mobile applications can have on the overall enterprise system*."); *id.* at 3 ("Using the mobile protocols, the performance testing team is able to capture mobile traffic and *generate realistic mobile load on the system under test*."); Ex. DD (Texas Compl. Ex. B, "Data Sheet:  HP Network Virtualization for Mobile," as attached by Wapp to the Texas Compl.) at 4 ("You can test, validate, remediate, and achieve mobile app optimization before deployment to verify that your *back-end capacity* and end-user experience requirements

are met before deployment.").  Moreover, testing a server computer with load is different from testing an application for a mobile device.

41.     By way of further example, and not by way of limitation, claim 20 of the '864 patent requires a "method for emulating an application playing on an application player in each of a plurality of mobile devices," comprising, among other things, "emulating each of the mobile devices in real time using respective models running on a processor extrinsic to the mobile devices, wherein each of the models is based on the retrieved characteristics," and "playing the application in real time using the application player within each of the models."  However, none of the Accused Products with respect to this claim meets these requirements of this claim.  For example, and not by way of limitation, certain Accused Products with respect to these claims may be used in certain ways to record and replay a script created by the user, but the Accused Products with respect to these claims do *not* emulate an application playing on an application player as claimed, do *not* emulate a plurality of mobile devices in real time as claimed, and do *not* play an application in real time as claimed.  *See, e.g.*, Ex. V ("Mobile Center Help, version 2.80:  Record Scripts") (*E.g.*, "You can record a typical business process on a mobile device using the TruClient -Mobile Center integration."), *available online at* https://admhelp.microfocus.com/mobilecenter/en/2.80/Content/LRTC-Mobile/mobile_on_LR_script_record.htm; Ex. W ("Mobile Center Help, version 2.80:  Native and Hybrid App Support") (describing, *e.g.*, certain creation of native mobile scripts but not, *e.g.*, emulating an application playing on an application player as claimed, emulating a plurality of mobile devices in real time as claimed, or playing an application in real time as claimed), *available online at* https://admhelp.microfocus.com/mobilecenter/en/2.80/Content/LRTC-

16

Mobile/mobile_on_LR_native.htm; Ex. GG (Texas Compl., Ex. 5) (purported infringement claim chart for '864 patent) at 20–23.

42.   By way of further example, and not by way of limitation, claim 29 of the '864 patent requires a "method for developing an application to play on a mobile device that includes an application player," comprising, among other things, "emulating each said mobile device using a respective model, wherein each said model is based upon the characteristics of a respective said mobile device," "playing the application in real time within each said model," and "monitoring each said model to determine resource utilization of the application for each said mobile device."  However, none of the Accused Products with respect to this claim meets these requirements of this claim.  For example, and not by way of limitation, certain Accused Products with respect to these claims may be used in certain ways to record and replay a script created by the user and a user may install a certain third-party emulator for a given device, but the Accused Products with respect to these claims do *not* emulate mobile devices using a model that is based upon the characteristics of the mobile device as claimed, do *not* play an application in real time as claimed, and do *not* monitor a model to determine resource utilization for an application as claimed.  *See, e.g.*, Ex. V ("Mobile Center Help, version 2.80:  Record Scripts") (*E.g.*, "You can record a typical business process on a mobile device using the TruClient -Mobile Center integration."), *available online at*

https://admhelp.microfocus.com/mobilecenter/en/2.80/Content/LRTC-Mobile/mobile_on_LR_script_record.htm; Ex. W ("Mobile Center Help, version 2.80:  Native and Hybrid App Support") (describing, *e.g.*, certain creation of native mobile scripts but not, *e.g.*, emulating mobile devices using a model that is based upon the characteristics of the mobile device as claimed, playing an application in real time as claimed, or monitoring a model to

determine resource utilization for an application as claimed), *available online at*

https://admhelp.microfocus.com/mobilecenter/en/2.80/Content/LRTC-

Mobile/mobile_on_LR_native.htm; Ex. X ("Mobile Center Help, version 2.80:  Working with

Emulators") ("Emulators let you install and replay tests on emulated devices.  Mobile Center lets

you test your devices using some of the popular emulators. . . .   To prepare a test through an

emulator: . . . Install your emulator.  Prepare your environment as described by your emulator's

documentation."), *available at*

https://admhelp.microfocus.com/mobilecenter/en/2.80/Content/Emulators.htm; Ex. GG (Texas

Compl., Ex. 5) (purported infringement claim chart for '864 patent) at 27–30.

43.     An actual case or controversy exists between the parties concerning Plaintiffs'

alleged infringement of the '864 patent.  Plaintiffs are entitled to a declaratory judgment that they

have not infringed and are not infringing the '864 patent.

## THIRD CLAIM FOR RELIEF

### (Non-infringement of the '192 patent)

44.     Plaintiffs repeat and reallege the allegations in paragraphs 1–43 above as if

contained herein.

45.     Wapp has alleged that Micro Focus International plc "without authorization has

directly infringed at least Claim 1 of the '192 Patent, including making, using (including for

testing purposes), selling, and offering for sale systems for testing an application for a mobile

device ('Accused System') including and not limited to the LoadRunner, Performance Center,

StormRunner and Mobile Center software products."  Texas Compl. ¶ 95.  Wapp has specifically

alleged infringement of claims 1–3 of the '192 patent by certain Accused Products, as discussed

*supra* ¶ 12.

46.     Plaintiffs do not infringe any claim of the '192 patent, willfully or otherwise, either literally or under the doctrine of equivalents.

47.     For example, and not by way of limitation, each of claims 1–3 of the '192 patent requires a "system for developing an application for a mobile device" comprising, among other things, "a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application."  However, none of the Accused Products with respect to these claims meets these requirements of these claims.  For example, and not by way of limitation, certain Accused Products with respect to these claims may be used to test certain effects of load on a server computer, including as certain load could be generated by a mobile device, but the Accused Products with respect to these claims do *not* provide a system for developing an application on a mobile device as claimed and do *not* visually emulate certain items indicative of performance of a mobile device when executing an application as claimed. *See, e.g.*, Ex. CC (Texas Compl. Ex. A, "Data Sheet:  HP LoadRunner and HP Performance Center with Shunra Network Virtualization," as attached by Wapp to the Texas Compl.) at 2 ("Often, performance testing fails to incorporate the significant impact that *mobile applications can have on the overall enterprise system*."); *id.* at 3 ("Using the mobile protocols, the performance testing team is able to capture mobile traffic and *generate realistic mobile load on the system under test*."); Ex. DD (Texas Compl. Ex. B, "Data Sheet:  HP Network Virtualization for Mobile," as attached by Wapp to the Texas Compl.) at 4 ("You can test, validate, remediate, and achieve mobile app optimization before deployment to verify that your *back-end capacity* and end-user experience requirements are met before deployment.").  Moreover, testing a server computer with load is different from authoring an application for a mobile device.  By way of

further example, and not by way of limitation, the LoadRunner interface is *not* an interface to author software as claimed.  *See, e.g.*, Ex. EE (Texas Compl. Ex. G, "Data Sheet:  LoadRunner," as attached by Wapp to the Texas Compl.) at 3–4 (depicting certain visual interfaces in connection with LoadRunner, none of which is an interface for authoring an application for a mobile device).

48.      An actual case or controversy exists between the parties concerning Plaintiffs' alleged infringement of the '192 patent.  Plaintiffs are entitled to a declaratory judgment that they have not infringed and are not infringing the '192 patent.

### FOURTH CLAIM FOR RELIEF

### (Invalidity of the '678 patent)

49.      Plaintiffs repeat and reallege the allegations in paragraphs 1–48 above as if contained herein.

50.      Wapp has specifically alleged infringement of claims 1–3, 26, 37, and 45 of the '678 patent by certain Accused Products, as discussed *supra* ¶ 12.  In view of Wapp's infringement allegations in the Texas Suit, an actual case or controversy exists between the parties as to the validity of the claims of the '678 patent.

51.      The claims of the '678 patent are invalid for failing to comply with 35 U.S.C. §§ 102 and 103.

52.      For example, and not by way of limitation, every element of claims 1–3, 26, 37, and 45 of the '678 patent is described in U.S. Pub. No. 2003/0156549 to Binder et al. ("Binder") (Ex. II) and/or U.S. Pub. No. 2006/0223522 to Guo et al. ("Guo") (Ex. JJ), alone or in combination with U.S. Pub. No. 2005/0090239 to Lee et al. ("Lee") (Ex. KK), and/or LoadRunner and related products integrated with Shunra's Network Virtualization technology, and/or obvious in light thereof.

53.     Binder was filed on January 9, 2003, and it was published on August 21, 2003.  It is thus prior art.  Binder discloses a wireless testing system able to "simulate, emulate, and control a wide range of mobile user devices and associated network equipment over multisource, multiprotocol, cellular voice and wireless data networks to evaluate mobile application reliability and performance."  *See* Binder ¶ [0011].  Binder's disclosed test system further "simulates the behavior of end-users operating wireless phones, personal digital assistants, pagers, and so forth. The exemplary WTS architecture includes both hard ware and software components, but alternately, may include only software or only hardware components. The components . . . include a Test Console 7, Application Model Builder 8, Test Repository Manager 9, Simulator 10, Test Controller 11, Test Agent 14, Event Probe Framework 36, Comparator Framework 38, and Oracle Framework 37. These components interact to provide a virtual environment including a number of Simulated end-users from which a product and/or network may be automatically and realistically tested."  *Id.* ¶ [0013].  Binder also teaches that "Virtual users and end-user behavior models are part of the overall application model developed by a test engineer and stored in the WTS Repository Manager 9.  Representation of the end-users movement and network interaction through a large geographical area may be provided by entering coverage maps into the WTS Repository Manager 9 that map Signal Strength, delay time, allowable users, and other location-specific variables onto a specific physical space."  *Id.* ¶ [0014].  "[T]he Test Engineer uses the Application Model Builder 8 and the Test Repository Manager 9 to create an executable model of a system under test and its environment, and to perform analysis of models and test runs. The Simulator 10 may run offline (i.e., it runs to completion before a test run is started), and ultimately generates a Test Run Input file 29."  *Id.* ¶ [0019].  The system allows a user to "select/execute a test suite to run."  *Id.* ¶ [0020].  The system may test "cell signal properties"

and "user movement through a cell (i.e., radio coverage area)," as well as other characteristics.
*Id.* ¶ [0021].

54. Guo was filed on March 29, 2005, and is thus prior art. Guo describes a system
for testing an application for a mobile device. *See* Guo at Abstract & ¶¶ [0024]–[0025]. Guo
also describes simulating network characteristics indicative of the mobile device's performance
during execution of the application. *Id.* ¶¶ 25, 33.

55. Lee was filed on October 22, 2003, and is thus prior art. Lee describes the use of
profile display windows in connection with simulations. *See* Lee at Fig. 1 & ¶¶ [0022]–[0023].

56. Shunra's Network Virtualization technology was integrated with LoadRunner at
least as early as 2003 and on sale at that time, and is thus prior art. The technology allowed for
network virtualization and load testing, wherein a device could simulate network conditions to
test an application server's reliability at scale.

57. Because the above-described technologies generally related to network
virtualization or emulation, and to the extent the above-described technologies do not themselves
identify each element of the claims asserted in the Texas Suit, it would have been obvious to one
skilled in the art to combine them.

58. The claims of the '678 patent are invalid also for failing to comply with 35 U.S.C.
§ 112(1). For example, and not by way of limitation, claims 1–3, 26, 37, and 45 of the '678
patent are invalid for at least the reason that the patent specification does not provide support for
the full scope of the claims as asserted by Wapp in the Texas Suit, *i.e.*, that the claimed "system
for testing an application for a mobile device" comprising, among other things, "a software
testing interface configured to simultaneously visually simulate, via one or more profile display
windows, a plurality of operator network characteristics including at least bandwidth availability

indicative of performance of the mobile device when executing the application" can be met by testing certain effects of load from a mobile device on a server computer. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (finding that "[w]hether the flaw in the specification is regarded as a failure to demonstrate that the patentee possessed the full scope of the invention . . . or a failure to enable the full breadth of that claim, the specification provides inadequate support for the claim under section 112, paragraph one"), *reh'g en banc denied*, 433 F.3d 1373 (Fed. Cir. 2006).

59.     The claims of the '678 patent are invalid also for failing to comply with 35 U.S.C. § 112(2).  For example, and not by way of limitation, claims 1–3, 26, 37, and 45 are indefinite at least because they fail to apprise a person of skill in the art what is claimed with respect to visually simulating certain operator network characteristics, performance of the mobile device, and/or bandwidth data predetermined from interactions.

60.     Plaintiffs are therefore entitled to declaratory judgment that these claims of the '678 patent, and such other claims of the patent that Wapp may assert against Plaintiffs, are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

<u>**FIFTH CLAIM FOR RELIEF**</u>

<u>**(Invalidity of the '864 patent)**</u>

61.     Plaintiffs repeat and reallege the allegations in paragraphs 1–60 above as if contained herein.

62.     Wapp has specifically alleged infringement of claims 1–3 and 8–12 of the '864 patent by certain Accused Products, claim 20 of the '864 patent by certain Accused Products, and claim 29 of the '864 patent by certain Accused Products, as discussed *supra* ¶ 12.  In view of Wapp's infringement allegations in the Texas Suit, an actual case or controversy exists between the parties as to the validity and eligibility of the claims of the '864 patent.

63.    The claims of the '864 patent are invalid for failing to comply with 35 U.S.C. §§ 102 and 103.

64.    For example and not by way of limitation, every element of claims 1–3 and 8–12 of the '864 patent is described in Binder, Guo, and/or LoadRunner and related products integrated with Shunra's Network Virtualization technology, and/or obvious in light thereof.

65.    Binder was filed on January 9, 2003, and it was published on August 21, 2003.  It is thus prior art.  Binder discloses a wireless testing system able to "simulate, emulate, and control a wide range of mobile user devices and associated network equipment over multisource, multiprotocol, cellular voice and wireless data networks to evaluate mobile application reliability and performance." *See* Binder ¶ [0011].  Binder's disclosed test system further "simulates the behavior of end-users operating wireless phones, personal digital assistants, pagers, and so forth. The exemplary WTS architecture includes both hard ware and software components, but alternately, may include only software or only hardware components. The components . . . include a Test Console 7, Application Model Builder 8, Test Repository Manager 9, Simulator 10, Test Controller 11, Test Agent 14, Event Probe Framework 36, Comparator Framework 38, and Oracle Framework 37. These components interact to provide a virtual environment including a number of Simulated end-users from which a product and/or network may be automatically and realistically tested." *Id.* ¶ [0013].  Binder also teaches that "Virtual users and end-user behavior models are part of the overall application model developed by a test engineer and stored in the WTS Repository Manager 9. Representation of the end-users movement and network interaction through a large geographical area may be provided by entering coverage maps into the WTS Repository Manager 9 that map Signal Strength, delay time, allowable users, and other location-specific variables onto a specific physical space." *Id.* ¶ [0014].  "[T]he Test Engineer uses the

Application Model Builder 8 and the Test Repository Manager 9 to create an executable model of a system under test and its environment, and to perform analysis of models and test runs. The Simulator 10 may run offline (i.e., it runs to completion before a test run is started), and ultimately generates a Test Run Input file 29." *Id.* ¶ [0019]. The system allows a user to "select/execute a test suite to run." *Id.* ¶ [0020]. The system may test "cell signal properties" and "user movement through a cell (i.e., radio coverage area)," as well as other characteristics. *Id.* ¶ [0021].

66.     Guo was filed on March 29, 2005, and is thus prior art. Guo describes a system for testing an application for a mobile device. *See* Guo at Abstract & ¶¶ [0024]–[0025]. Guo also describes simulating network characteristics indicative of the mobile device's performance during execution of the application. *Id.* ¶¶ 25, 33.

67.     Shunra's Network Virtualization technology was integrated with LoadRunner at least as early as 2003 and on sale at that time, and is thus prior art. The technology allowed for network virtualization and load testing, wherein a device could simulate network conditions to test an application server's reliability at scale.

68.     Because the above-described technologies generally related to network virtualization or emulation, and to the extent the above-described technologies do not themselves identify each element of the claims asserted in the Texas Suit, it would have been obvious to one skilled in the art to combine them.

69.     By way of further example, and not by way of limitation, every element of claims 20 and 29 of the '864 patent are described in Binder and/or the provisional application for U.S. Pub. No. 2005/0125211 to Nahata et al ("Nahata") (Ex. LL), alone or in combination with the BREW Emulator, and/or obvious in light thereof.

70.     In addition to the teachings above, Binder also teaches the use of "Virtual Mobile User Device[s]."  Binder ¶ 27.  The Virtual MUDs are "software-only emulation of a MUD 21, which supports a MUD Client Under Test 16, which are both controlled through a Test Agent 14. The number of Virtual MUDs 15 is limited only by the storage capacity of the WTS Test Console Server 5."  *Id.*  Binder specifically discloses testing of "MUD 21 Resource Utilization." *Id.* ¶ 5.

71.     Nahata was filed on November 13, 2003, and is thus prior art.  Nahata describes "a method to enable device[-]specific simulation in a modular and flexible manner."  Nahata at 1.  Nahata also describes the use of "device packs," which "contain[] all the required information by BREW Simulator to simulate the device."  *Id.* at 1; *see also id.* at 3, 5.  These device packs allow for real-time simulation of the emulated devices.  *Id.* at 3, 4.

72.     The BREW emulator was on sale at least by September 2001, and is thus prior art. On information and belief, the BREW emulator had all of the capabilities described in Nahata, and additional functionality as well.

73.     The claims of the '864 patent are invalid also for failing to comply with 35 U.S.C. § 112(1).  For example, and not by way of limitation, claims 1–3 and 8–12 of the '864 patent are invalid for at least the reason that the patent specification does not provide support for the full scope of the claims as asserted by Wapp in the Texas Suit, *i.e.*, that the claimed "system for testing an application for a mobile device" comprising, among other things, "software configured to simulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application" can be met by testing certain effects of load from a mobile device on a server computer.  *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (finding that "[w]hether the

flaw in the specification is regarded as a failure to demonstrate that the patentee possessed the full scope of the invention . . . or a failure to enable the full breadth of that claim, the specification provides inadequate support for the claim under section 112, paragraph one"), *reh'g en banc denied*, 433 F.3d 1373 (Fed. Cir. 2006).  By way of further example, and not by way of limitation, claim 20 of the '864 patent is invalid for at least the reason that the patent specification does not provide support for the full scope of the claim as asserted by Wapp in the Texas Suit, *i.e.*, that the claimed "method for emulating an application playing on an application player in each of a plurality of mobile devices," comprising, among other things, "emulating each of the mobile devices in real time using respective models running on a processor extrinsic to the mobile devices, wherein each of the models is based on the retrieved characteristics," and "playing the application in real time using the application player within each of the models" can be met by recording and replaying a script created by the user.  *See LizardTech*, 424 F.3d at 1345.  By way of further example, and not by way of limitation, claim 29 of the '864 patent is invalid for at least the reason that the patent specification does not provide support for the full scope of the claim as asserted by Wapp in the Texas Suit, *i.e.*, that the claimed "method for developing an application to play on a mobile device that includes an application player," comprising, among other things, "emulating each said mobile device using a respective model, wherein each said model is based upon the characteristics of a respective said mobile device," "playing the application in real time within each said model," and "monitoring each said model to determine resource utilization of the application for each said mobile device" can be met by recording and replaying a script created by the user and a user installing a certain third-party emulator for a given device.  *See LizardTech*, 424 F.3d at 1345.

74.     The claims of the '864 patent are invalid also for failing to comply with 35 U.S.C.

§ 112(2).  For example, and not by way of limitation, claims 1–3 and 8–12 are indefinite at least

because they fail to apprise a person of skill in the art what is claimed with respect to simulating

certain network characteristics, performance of the mobile device, and/or based on data of

interaction with networks in non-simulated environments.  By way of further example, and not

by way of limitation, claims 20 and 29 are indefinite at least because they fail to apprise a person

of skill in the art what is claimed with respect to an application player/playing, indicative of

performance, emulating in real time using a respective model, and/or resource utilization

information by/of the application.

75.     Plaintiffs are therefore entitled to declaratory judgment that these claims of the

'864 patent, and such other claims of the patent that Wapp may assert against Plaintiffs, are

invalid under 35 U.S.C. §§ 102, 103, and/or 112.

## SIXTH CLAIM FOR RELIEF

### (Invalidity of the '192 patent)

76.     Plaintiffs repeat and reallege the allegations in paragraphs 1–75 above as if

contained herein.

77.     Wapp has specifically alleged infringement of claims 1–3 of the '192 patent by

certain Accused Products, as discussed *supra* ¶ 12.  In view of Wapp's infringement allegations

in the Texas Suit, an actual case or controversy exists between the parties as to the validity of the

claims of the '192 patent.

78.     The claims of the '192 patent are invalid for failing to comply with 35 U.S.C.

§§ 102 and 103.

79.     For example, and not by way of limitation, every element of claims 1–3 of the

'192 patent is described in Binder and/or U.S. Pub. No. 2006/0205398 to Seckendorf et al.

("Seckendorf") (Ex. MM), alone or in combination with Lee and/or LoadRunner and related

products integrated with Shunra's Network Virtualization technology, and/or obvious in light

thereof.

80.     Binder was filed on January 9, 2003, and it was published on August 21, 2003.  It

is thus prior art.  Binder discloses a wireless testing system able to "simulate, emulate, and

control a wide range of mobile user devices and associated network equipment over multisource,

multiprotocol, cellular voice and wireless data networks to evaluate mobile application reliability

and performance."  *See* Binder ¶ [0011].  Binder's disclosed test system further "simulates the

behavior of end-users operating wireless phones, personal digital assistants, pagers, and so forth.

The exemplary WTS architecture includes both hard ware and software components, but

alternately, may include only software or only hardware components. The components . . .

include a Test Console 7, Application Model Builder 8, Test Repository Manager 9, Simulator

10, Test Controller 11, Test Agent 14, Event Probe Framework 36, Comparator Framework 38,

and Oracle Framework 37. These components interact to provide a virtual environment including

a number of Simulated end-users from which a product and/or network may be automatically and

realistically tested."  *Id.* ¶ [0013].  Binder also teaches that "Virtual users and end-user behavior

models are part of the overall application model developed by a test engineer and stored in the

WTS Repository Manager 9. Representation of the end-users movement and network interaction

through a large geographical area may be provided by entering coverage maps into the WTS

Repository Manager 9 that map Signal Strength, delay time, allowable users, and other location-

specific variables onto a specific physical space."  *Id.* ¶ [0014].  "[T]he Test Engineer uses the

Application Model Builder 8 and the Test Repository Manager 9 to create an executable model

of a system under test and its environment, and to perform analysis of models and test runs. The

Simulator 10 may run offline (i.e., it runs to completion before a test run is started), and ultimately generates a Test Run Input file 29." *Id.* ¶ [0019].  The system allows a user to "select/execute a test suite to run."  *Id.* ¶ [0020].  The system may test "cell signal properties" and "user movement through a cell (i.e., radio coverage area)," as well as other characteristics. *Id.* ¶ [0021].

81.     Seckendorf was filed on March 14, 2005, and is thus prior art.  Seckendorf describes a system for developing an application for a mobile device.  *See* Seckendorf at Abstract.  Seckendorf further describes emulating a plurality of network characteristics indicative of performance of the mobile device while the application is executing.  *Id.* ¶¶ [0025]–[0027].

82.     Lee was filed on October 22, 2003, and is thus prior art.  Lee describes the use of profile display windows in connection with simulations.  *See* Lee at Fig. 1 & ¶¶ [0022]–[0023].

83.     Shunra's Network Virtualization technology was integrated with LoadRunner at least as early as 2003 and on sale at that time, and is thus prior art.  The technology allowed for network virtualization and load testing, wherein a device could simulate network conditions to test an application server's reliability at scale.

84.     Because the above-described technologies generally related to network virtualization or emulation, and to the extent the above-described technologies do not themselves identify each element of the claims asserted in the Texas Suit, it would have been obvious to one skilled in the art to combine them.

85.     The claims of the '192 patent are invalid also for failing to comply with 35 U.S.C. § 112(1).  For example, and not by way of limitation, claims 1–3 of the '192 patent are invalid for at least the reason that the patent specification does not provide support for the full scope of the claims as asserted by Wapp in the Texas Suit, *i.e.*, that the claimed "system for developing an

application for a mobile device" comprising, among other things, "a software authoring interface configured to simultaneously visually emulate, via one or more profile display windows, a plurality of network characteristics indicative of performance of the mobile device when executing the application" can be met by testing certain effects of load from a mobile device on a server computer. *See LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (finding that "[w]hether the flaw in the specification is regarded as a failure to demonstrate that the patentee possessed the full scope of the invention . . . or a failure to enable the full breadth of that claim, the specification provides inadequate support for the claim under section 112, paragraph one"), *reh'g en banc denied*, 433 F.3d 1373 (Fed. Cir. 2006).

86.     The claims of the '192 patent are invalid also for failing to comply with 35 U.S.C. § 112(2).  For example, and not by way of limitation, claims 1–3 are indefinite at least because they fail to apprise a person of skill in the art what is claimed with respect to visually emulating certain operator network characteristics, performance of the mobile device, and/or simulating a network connection state encountered by a mobile device.

87.     Plaintiffs are therefore entitled to declaratory judgment that these claims of the '192 patent, and such other claims of the patent that Wapp may assert against Plaintiffs, are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

### SEVENTH CLAIM FOR RELIEF

### (Ineligibility of the '678 patent)

88.     Plaintiffs repeat and reallege the allegations in paragraphs 1–87 above as if contained herein.

89.     The '678 patent claims ineligible subject matter in violation of 35 U.S.C. § 101.  *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. --, 134 S. Ct. 2347 (2014).  First, the claims, including claims 1–3, 26, 37, and 45, are directed to one or more abstract ideas.  For example,

based on the way in which Wapp has described the alleged inventions of the asserted patents, *see*, *e.g.*, Texas Compl. ¶¶ 13–29, the asserted claims are directed to the ideas of emulating the usage of a product and/or simulation testing of a product or the conditions in which a product is used, which are long-standing practices that predate the claimed technology and are used in myriad industries.  Second, whether as an ordered combination or considered independently, the claim limitations contain no inventive concept sufficient to transform the claimed abstract ideas into a patent-eligible application.  The concepts of emulating product usage and/or simulation testing based on usage conditions were well-known and widely used prior to the date of the alleged invention, as set forth above in Plaintiffs' requests for declaratory judgment of invalidity.

90.     Plaintiffs are entitled to a declaratory judgment that the '678 patent claims ineligible subject matter.

## EIGHTH CLAIM FOR RELIEF

### (Ineligibility of the '864 patent)

91.     Plaintiffs repeat and reallege the allegations in paragraphs 1–90 above as if contained herein.

92.     The '864 patent claims ineligible subject matter in violation of 35 U.S.C. § 101.  *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. --, 134 S. Ct. 2347 (2014).  First, the claims, including claims 1–3, 8–12, 20, and 29, are directed to one or more abstract ideas.  For example, based on the way in which Wapp has described the alleged inventions of the asserted patents, *see*, *e.g.*, Texas Compl. ¶¶ 13–29, the asserted claims are directed to the ideas of emulating the usage of a product and/or simulation testing of a product or the conditions in which a product is used, which are long-standing practices that predate the claimed technology and are used in myriad industries.  Second, whether as an ordered combination or considered independently, the claim limitations contain no inventive concept sufficient to transform the claimed abstract ideas

into a patent-eligible application.  The concepts of emulating product usage and/or simulation testing based on usage conditions were well-known and widely used prior to the date of the alleged invention, as set forth above in Plaintiffs' requests for declaratory judgment of invalidity.

93.     Plaintiffs are entitled to a declaratory judgment that the '864 patent claims ineligible subject matter.

## NINTH CLAIM FOR RELIEF

### (Ineligibility of the '192 patent)

94.     Plaintiffs repeat and reallege the allegations in paragraphs 1–93 above as if contained herein.

95.     The '192 patent claims ineligible subject matter in violation of 35 U.S.C. § 101.  *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. --, 134 S. Ct. 2347 (2014).  First, the claims, including claims 1–3, are directed to one or more abstract ideas.  For example, based on the way in which Wapp has described the alleged inventions of the asserted patents, *see*, *e.g.*, Texas Compl. ¶¶ 13–29, the asserted claims are directed to the ideas of emulating the usage of a product and/or simulation testing of a product or the conditions in which a product is used, which are long-standing practices that predate the claimed technology and are used in myriad industries.  Second, whether as an ordered combination or considered independently, the claim limitations contain no inventive concept sufficient to transform the claimed abstract ideas into a patent-eligible application.  The concepts of emulating product usage and/or simulation testing based on usage conditions were well-known and widely used prior to the date of the alleged invention, as set forth above in Plaintiffs' requests for declaratory judgment of invalidity.

96.     Plaintiffs are entitled to a declaratory judgment that the '192 patent claims ineligible subject matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

97.     A judgment that the claims of each of the Patents-in-Suit are invalid;

98.     A judgment that the claims of each of the Patents-in-Suit are ineligible;

99.     A judgment that Plaintiffs have not infringed and are not infringing any of the claims of the Patents-in-Suit;

100.     A declaration that this is an exceptional case, and an award to Plaintiffs of their costs and reasonable attorneys' fees incurred in this case as provided by 35 U.S.C. § 285; and

101.     Such other relief as this Court deems just and proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3360

Neema Jalali
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258

Dated:  October 15, 2018
5962193/45495

By:   _/s/ David E. Moore_
        David E. Moore (#3983)
        Bindu A. Palapura (#5370)
        Stephanie E. O'Byrne (#4446)
        Jennifer Penberthy Buckley (#6264)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        Wilmington, DE  19801
        Tel:  (302) 984-6000
        dmoore@potteranderson.com
        bpalapura@potteranderson.com
        sobyrne@potteranderson.com
        jbuckley@potteranderson.com

*Attorneys for Plaintiffs Seattle SpinCo, Inc.
and EntIT Software LLC*