**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SEATTLE SPINCO, INC. and<br>ENTIT SOFTWARE LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 18-1585-RGA |
| | ) | |
| v. | ) | |
| | ) | |
| WAPP TECH LIMITED PARTNERSHIP<br>and WAPP TECH CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS SEATTLE SPINCO, INC. AND ENTIT SOFTWARE LLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS, TRANSFER, OR STAY**

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3360

Neema Jalali
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258

Andrew Robb
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5334

Dated:  December 11, 2018
6024552 / 45495

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Jennifer Penberthy Buckley (#6264)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
jbuckley@potteranderson.com

*Attorneys for Plaintiffs Seattle SpinCo, Inc.
and EntIT Software LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION AND SUMMARY OF ARGUMENT           1

II.    FACTUAL BACKGROUND           3

    A.    Plaintiffs and Their Accused Products...................................................................3

    B.    Wapp's Texas Suit Against Micro Focus International plc ....................................4

    C.    Wapp's Texas Suits Against the Customers and HPE.............................................5

III.   ARGUMENT           6

    A.    This Court Has Subject Matter Jurisdiction Over This Action...............................6

        1.    Wapp's Allegations of Infringement in Texas Against Plaintiffs' Accused Products Establish a Justiciable Controversy...............................6

        2.    Plaintiffs Are Responsible for the Accused Products ..................................9

    B.    This Case Should Proceed in Delaware ................................................................14

        1.    The First-to-File Rule Does Not Favor the Micro Focus Texas Action.........................................................................................................14

        2.    This Suit Should Not Be Transferred to the Eastern District of Texas ..........................................................................................................16

        3.    This Case Should Not Be Stayed ...............................................................18

IV.   CONCLUSION           19

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Arkema Inc. v. Honeywell Int'l, Inc.*,
   706 F.3d 1351 (Fed. Cir. 2013)............................................................................8

*Arris Group, Inc. v. British Telecommunications*,
   639 F.3d 1368 (Fed. Cir. 2011)....................................................................7, 8, 9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009)............................................................................5

*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*,
   735 F. Supp. 2d 277 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012)............................13

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995)................................................................................13

*Garvin v. City of Philadelphia*,
   354 F.3d 215 (3d Cir. 2003)...............................................................................16

*Jefferson Ward Stores, Inc. v. Doody Co.*,
   560 F. Supp. 35 (E.D. Pa. 1983) ....................................................................14, 15

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995).................................................................................17

*Klayman v. Obama*,
   2016 WL 5942227 (N.D. Tex. Oct. 12, 2016) .......................................................18

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)............................................................................................7

*Microsoft Corp. v. GeoTag, Inc.*,
   Civil Action No. 11-175-RGA, 2014 WL 4312167 (D. Del. Aug. 29, 2014) ....................8, 9

*In re Mobile Telecommunications Techs., LLC*,
   247 F. Supp. 3d 456 (D. Del. 2017)..................................................................8, 9

*In re Mobile Telecommunications Techs., LLC*,
   243 F. Supp. 3d 478 (D. Del. 2017)................................................................14, 15

*Moran v. Kingdom of Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994) ..............................................................................18

*Negron-Torres v. Verizon Commc'ns, Inc.*,
  478 F.3d 19 (1st Cir. 2007) ............................................................................13

*Patterson v. Home Depot, USA, Inc.*,
  684 F. Supp. 2d 1170 (D. Ariz. 2010) ...........................................................13

*Price v. Waste Mgmt., Inc.*,
  Civil Action No. ELH-13-02535, 2014 WL 1764722
  (D. Maryland Apr. 30, 2014) .........................................................................13

*Quick Techs., Inc. v. Sage Group PLC*,
  313 F.3d 338 (5th Cir. 2002) .........................................................................13

*Rosebud LMS, Inc. v. Salesforce.com, Inc.*,
  C.A. No. 17-1712-CFC, 2018 WL 6061343 (D. Del. Nov. 20, 2018) ...................17

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) .......................................................................................18

*SanDisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007) ........................................................................7

*Special Indus. Inc. v. Zamil Grp. Holding Co.*,
  No. 4:11-CV-3207, 2013 WL 1345612 (S.D. Tex. Mar. 29, 2013), *aff'd*,
  578 F. App'x 325 (5th Cir. 2014) ...................................................................14

*Teva Pharmaceuticals v. Novartis Pharmaceuticals*,
  482 F.3d 1330 (Fed. Cir. 2007).........................................................................7

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003)...........................................................13

**Statutes**

28 U.S.C. 1404(a) .................................................................................................17

**Rules**

Fed. R. Civ. P. 15(c)(1)(C) ....................................................................................16

Fed. R. Civ. P. 15(c)(1)(C)(2)................................................................................16

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Seattle SpinCo, Inc. ("Seattle SpinCo") and EntIT Software LLC ("EntIT Software") brought this lawsuit for declaratory judgment after Defendants, Wapp Tech Limited Partnership and Wapp Tech Corp. (together, "Wapp"), filed a series of lawsuits in the Eastern District of Texas that accused certain software products and functionalities belonging to Plaintiffs (the "Accused Products") of infringing three Wapp patents (the "patents-in-suit"). Even though Wapp understood that Plaintiffs make and sell the Accused Products in the United States, Wapp deliberately avoided bringing suit against either Plaintiff, and instead filed suits against a former manufacturer of the Accused Products (Hewlett Packard Enterprise Company ("HPE")), two end-user customers, and Plaintiffs' foreign corporate parent, Micro Focus International plc ("MF plc").[1]

As Wapp's Texas complaints demonstrate, at the time Wapp filed its Texas suits, it knew that the Plaintiffs in this suit had acquired responsibility for the Accused Products from the former manufacturer, HPE.  Indeed, in several of the Texas complaints, Wapp cited to a publicly available "Separation and Distribution Agreement" that detailed a 2017 transaction by which HPE spun-off to Plaintiff Seattle SpinCo the business responsible for the Accused Products. That agreement, as well as publicly filed financial statements and additional unrebutted evidence submitted in the Texas suits, all make clear that Seattle SpinCo and its subsidiaries are responsible for the Accused Products in the United States.  Despite this knowledge, Wapp has deliberately avoided bringing suit against the entities actually responsible for the Accused

---

[1]   *See Wapp Tech Ltd. v. Hewlett Packard Enter. Co.*, No. 4:18-cv-00468-ALM (E.D. Tex. July 2, 2018) ("HPE Texas Action"); *Wapp Tech Ltd. v. Wells Fargo & Co.*, No. 4:18-cv-00501-ALM (E.D. Tex. July 16, 2018) ("Wells Fargo Texas Action"); *Wapp Tech Ltd. v. Bank of Am. Corp.*, No. 4:18-cv-00519-ALM (E.D. Tex. July 20, 2018) ("Bank of America Texas Action"); *Wapp Tech Ltd. v. Micro Focus International plc*, No. 4:18-cv-00469-ALM (E.D. Tex. July 2, 2018) ("Micro Focus Texas Action").

Products.  In fact, Wapp has gone so far as to misrepresent to the Texas court that the Separation and Distribution Agreement was between HPE and MF plc, when the cover of that agreement clearly states that only HPE and Seattle SpinCo are parties to the agreement.

Remarkably, Wapp now argues that there is no justiciable controversy between Wapp and Plaintiffs because Wapp has not directly accused Plaintiffs of infringing.  But Wapp's multiple infringement allegations against the Accused Products—products for which Plaintiffs are responsible—establishes a justiciable controversy between Plaintiffs and Wapp.  Wapp's deliberate decision to avoid naming Plaintiffs as defendants in its Texas suits does not deprive this Court of subject matter jurisdiction, and Wapp's request to dismiss this suit for lack of subject matter jurisdiction should therefore be denied.

Wapp also incorrectly argues that the Court should dismiss, transfer, or stay this case under the "first-to-file" rule in view of its Texas suit  against MF plc, or, alternatively, because the Eastern District of Texas is allegedly a more convenient venue.  The first-to-file rule favors the first case that "takes possession" of the subject matter.  That is *this* case.  MF plc, which does not make or sell the Accused Products, filed a motion to dismiss in Texas for lack of personal jurisdiction and lack of service of the complaint—which, five months after filing, has yet to occur.  That motion has been fully briefed, but nothing else has happened in that case.  Under controlling law, that case cannot proceed until the Texas court determines whether it possesses personal jurisdiction over MF plc, a foreign holding company with no ties to Texas.  And with respect to Wapp's claim that Texas is a more convenient venue, Wapp presents no evidence that Texas is a convenient venue at all, let alone a more convenient venue than Delaware.

This is the first and only case involving the parties actually responsible for the development, sale, and liabilities of the Accused Products:  Seattle SpinCo and EntIT Software.

Further, Seattle SpinCo and EntIT Software are prepared to litigate this dispute, and Wapp in its Texas suits also expressed a desire to progress on the merits without delay.  Respectfully, this case should move forward.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs and Their Accused Products

The Accused Products in this case—*e.g.*, LoadRunner, Performance Center, StormRunner Load, Mobile Center, and Network Virtualization—generally relate to computer hardware and/or software performance and functional testing, and fall within a larger group of software products and functionalities known as "Application Delivery Management" ("ADM"). Compl. (D.I. 1) ¶¶ 12, 21, 23; Horner Decl. (Ex. 1) ¶ 4; Letelier Decl. (Ex. 2) ¶ 3.  HPE, through its subsidiary Hewlett Packard Software LLC ("HP Software"), previously made and sold the ADM software products, including the Accused Products.  Evans Decl., dated October 17, 2018, (Ex. A) (the "October Evans Declaration") ¶ 9.[2]

As detailed in a series of agreements beginning in September 2016 (the "Seattle Transaction"), HPE spun out and transferred ownership of certain of its assets, including the subsidiary that held the ADM business (HP Software), to an entity called Seattle SpinCo, Inc. (the first named Plaintiff in this case), which was later merged into the Micro Focus family of companies.  October Evans Decl. (Ex. A) ¶¶ 5, 7–9.  As part of the transaction, HP Software, which held the ADM business, was renamed to EntIT Software LLC (the second named Plaintiff in this case) and became a wholly-owned subsidiary of Seattle SpinCo.  October Evans Decl. (Ex. A) ¶ 9.  HPE then divested its ownership of Seattle SpinCo, and Seattle SpinCo became a

---

[2] Exhibits 1–13 are exhibits to the Declaration of Mark Reiter, filed concurrently herewith. Exhibit A is an exhibit to the December 11, 2018 Declaration of Eileen Evans (the "December Evans Declaration"), also filed concurrently herewith.

wholly-owned, indirect subsidiary of MF plc.  October Evans Decl. (Ex. A) ¶ 8; Letelier Decl.

(Ex. 2) ¶ 4; Horner Decl. (Ex. 1) ¶ 9.

Thus, at the time of the Seattle Transaction, HP Software—again, renamed EntIT

Software as part of the transaction—had responsibility in the United States for the ADM

products and functionalities, including the Accused Products.  October Evans Decl. (Ex. A) ¶ 9.

EntIT Software has retained that responsibility for the Accused Products to this day.  December

Evans Decl. ¶ 4.  Thus, since the Seattle Transaction, the research, design, and development

responsibilities in the United States for the Accused Products has been, and continues to be, by

EntIT Software.  *Id.*  Additionally, since the Seattle Transaction, sales, offers for sale, marketing,

maintenance, and customer service of the Accused Products in the United States has been, and

continues to be, by EntIT Software.  *Id.*  Additionally, certain of HPE's liabilities associated with

the Accused Products—including for any past patent infringement by the Accused Products—

were assigned to Seattle SpinCo as part of the Seattle Transaction, and remain with Seattle

SpinCo to this day.  *See id.* ¶ 6.  Seattle SpinCo and EntIT Software are both organized under the

laws of Delaware and have their principal places of business in Sunnyvale, California.  Compl.

(D.I. 1) ¶¶ 2–3.

**B.      Wapp's Texas Suit Against Micro Focus International plc**

Despite knowing that Seattle SpinCo and/or EntIT Software are responsible for the

Accused Products (*see* Compl. (D.I. 1) ¶¶ 16, 22), Wapp filed a complaint in the Eastern District

of Texas on July 2, 2018, accusing Plaintiffs' indirect parent company, MF plc, of infringing the

patents-in-suit by developing, manufacturing, marketing, and selling the Accused Products.  *Id.*

¶ 11; Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30).  MF plc, however, is a foreign

holding company that "does not develop, manufacture, market, sell, or distribute any product or

service of any nature," including any of the Accused Products.  Horner Decl. (Ex. 1) ¶¶ 3, 5.

4

Rather, and as explained above, the ownership of and operations related to the Accused Products, including all research and development, marketing, and sales in the United States, as well as any liability for patent infringement by the Accused Products, is attributable to Plaintiffs Seattle SpinCo and EntIT, subsidiaries of MF plc.  *Id.* ¶¶ 5, 9; *see* December Evans Decl. ¶¶ 4, 6.

On October 17, 2018, MF plc filed a motion to dismiss the Micro Focus Texas action for lack of personal jurisdiction, improper service, and a failure to serve.  As MF plc detailed in that motion and in an unrefuted accompanying declaration, MF plc is not subject to personal jurisdiction in Texas because it is a foreign holding company, is headquartered in England, and has no connection to the State of Texas.[3]  Micro Focus Texas Action, Mot. to Dismiss (Ex. 3) at 3.  Additionally, Wapp never properly served MF plc in that action, and instead, in a parking lot, handed the complaint and summons to an individual who is employed by a third party contractor for a MF plc subsidiary, and who, unsurprisingly, is not authorized to accept service on behalf of MF plc.  *Id.* at 2.  MF plc's motion to dismiss the Micro Focus Texas action has been fully briefed and remains pending.  No discovery or case management activities have occurred in that case.

## C.    Wapp's Texas Suits Against the Customers and HPE

Around the time it filed its suit against MF plc, Wapp also sued two alleged end-user customers of the Accused Products, Bank of America Corporation ("Bank of America") and Wells Fargo & Company ("Wells Fargo"), as well as the previous manufacturer of the accused

---

[3] While Wapp asserts that it has sought jurisdictional discovery in Texas, in Texas it made only a non-specific overture for discovery without describing the specific discovery sought, the identity of facts it expects discovery to reveal, and how those facts would support jurisdiction.  Without this type of detail, courts have rejected vague requests for jurisdictional discovery.  *See, e.g., Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1022–23 (Fed. Cir. 2009).

products, HPE.  *See* HPE Texas Action, Compl. (Ex. 4); Wells Fargo Texas Action, Compl. (Ex. 5); Bank of America Texas Action, Compl. (Ex. 6).

Because they are not responsible for making or selling the Accused Products, Bank of America, Wells Fargo, and HPE filed motions under the customer-suit doctrine and related case law to stay their cases pending resolution of the manufacturer suit.  *See* HPE Texas Action, Mot. to Stay (Ex. 7); Wells Fargo Texas Action, Mot. to Stay (Ex. 8); Bank of America Texas Action, Mot. to Stay (Ex. 9).  The court in Texas has not yet ruled on the motions for stay, nor have any discovery or case management activities occurred in those cases.

### III.   ARGUMENT

Wapp asserts that this case should be dismissed because there is allegedly no justiciable controversy between Plaintiffs and Wapp, and, alternatively, argues that this case should be dismissed, transferred, or stayed in view of the cases pending in the Eastern District of Texas. As explained below, each of Wapp's arguments lacks merit, and its motion should be denied.

**A.    This Court Has Subject Matter Jurisdiction Over This Action**

**1.    Wapp's Allegations of Infringement in Texas Against Plaintiffs' Accused Products Establish a Justiciable Controversy**

Wapp argues that because it has never specifically accused *Plaintiffs* of infringement, there is no justiciable controversy as between Wapp and Plaintiffs.  Mot. at 4–5.  Wapp's argument fails because Wapp has filed multiple suits for alleged infringement by the Accused Products, for which Plaintiffs are responsible.

The Supreme Court has explained that a determination of subject matter jurisdiction in a declaratory judgment action requires courts to consider "whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

6

judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).  In *Teva Pharmaceuticals v. Novartis Pharmaceuticals,* 482 F.3d 1330, 1339 (Fed. Cir. 2007), the Federal Circuit explained that the Supreme Court's decision in *MedImmune* requires courts to look at "all the circumstances" to determine whether a justiciable controversy exists.  Likewise, in *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007), the court explained the declaratory judgment jurisdiction exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license. . ."  A review of all of the circumstances here demonstrates that a substantial controversy does exist between the parties as a result of Wapp's infringement claims brought against, at least, Plaintiffs' customers.

Under established law, an allegation that a product infringes a patent—even if the allegation is made against a customer or other non-manufacturer of the product and not expressly against the manufacturer—establishes a justiciable controversy as between the manufacturer and the patentee over that product.  For example, in *Arris Group, Inc. v. British Telecommunications,* 639 F.3d 1368 (Fed. Cir. 2011), the Federal Circuit held that as a result of BT's assertion of infringement, of both system and method claims, against a customer of Arris, subject matter jurisdiction existed for Arris' declaratory judgment suit.  The court, moreover, rejected BT's challenge to jurisdiction based on BT's contention that it did not specifically accuse the manufacturer—Arris—of infringement.  *Id.* at 1376–77.  The court explained that while BT did not specifically accuse Arris, "BT explicitly and repeatedly singled out Arris' products used in [Arris' customer's] network to support its infringement contentions."  *Id.*  The court thus rejected BT's argument that no case or controversy existed between it and Arris "because BT did not

explicitly accuse Arris itself of direct or indirect infringement" and explained "such an express accusation is unnecessary." *Id.* at 1379.

This District has also recognized that express accusations against the manufacturer are not necessary to establish subject matter jurisdiction in a declaratory judgment action. For instance, in *In re Mobile Telecommunications Technologies, LLC*, 247 F. Supp. 3d 456 (D. Del. 2017), a manufacturer brought a declaratory judgment action against a patentee in this District based on the patentee's filing of lawsuits against the manufacturer's customers and other vendors in Texas. 247 F. Supp. 3d at 460. In the Texas actions there, the patentee had alleged direct infringement by products from the manufacturer, but the patentee had not sued the manufacturer itself. *Id.* at 460–61. This Court held that the patentee's allegations against the manufacturer's products were sufficient to establish a justiciable controversy. *Id.* at 461 (citing *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013)); *see also Microsoft Corp. v. GeoTag, Inc.*, C.A. No. 11-175-RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014) ("GeoTag could just as easily have asserted a claim of direct infringement against Google and Microsoft, based on the same underlying circumstances in the customer suits. An express accusation by GeoTag was unnecessary.").

Here, Wapp has filed four separate infringement actions alleging that the Accused Products infringe the patents-in-suit. These four suits are against: Plaintiffs' indirect foreign parent entity (MF plc), a prior manufacturer of the Accused Products (HPE), and two end-user customers of certain Accused Products (Bank of America and Wells Fargo). Wapp's Texas complaints make clear that its allegations are directed to the Accused Products, not to any customer-specific modification of those products:

- **MF plc:** alleged infringement by making, using, selling, and offering for sale "the LoadRunner, Performance Center, StormRunner and Mobile Center software

products."  Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30) ¶ 59; *see also id.* ¶¶ 76, 95.

- **HPE:**  alleged infringement by making, using, selling, and offering for sale "the LoadRunner, Performance Center, StormRunner and Mobile Center software products."  HPE Texas Action, Compl. (Ex. 4) ¶ 71; *see also id.* ¶¶ 89, 109.

- **Bank of America:**  alleged infringement by making and/or using "the Micro Focus Software Suite, which includes LoadRunner."  Bank of America Texas Action, Compl. (Ex. 6) ¶ 26; *see also id.* ¶¶ 58, 76, 96.

- **Wells Fargo:**  alleged infringement by making and/or using "the Micro Focus Software Suite and LoadRunner."  Wells Fargo Texas Action, Compl. (Ex. 5) ¶ 26; *see also id.* ¶¶ 58, 76, 96.

These allegations unequivocally assert that Plaintiffs' products infringe, and thus are sufficient to establish a justiciable controversy between Plaintiffs and Wapp.  *See Arris,* 639 F.3d at 1376–77; *In re Mobile*, 247 F. Supp. 3d at 461; *Microsoft*, 2014 WL 4312167, at *2.

### 2.     Plaintiffs Are Responsible for the Accused Products

Wapp attempts to side-step this law by arguing that Plaintiffs might not be the entities who make and sell the Accused Products.  But Wapp's attempt lacks any support and relies, at best, upon false inferences drawn from the use of common trade names.  Mot. at 6–7.  As Wapp knew before it brought this motion, multiple unrebutted declarations and publicly available documents establish that *Plaintiffs—not* their indirect parent MF plc—had responsibility for the Accused Products at the time of the Seattle Transaction, and continue to have that responsibility since the Seattle Transaction.

For example, as explained above and supported by the uncontroverted declarations filed in Texas before Wapp filed this motion, and the December Evans Declaration filed concurrently herewith, HPE transferred its ADM business, which included the Accused Products, to Seattle SpinCo; as a result of that transfer, Seattle SpinCo and EntIT Software possess liability for and have responsibility for developing, selling, and maintaining the Accused Products in the United

9

States.  October Evans Decl. (Ex. A) ¶¶ 9–12; December Evans Decl. ¶¶ 4, 6.  Various publicly

available documents that Plaintiffs cataloged in their Complaint (*see* Compl. (D.I. 1) ¶ 22 (citing

exhibits)) also establish that Seattle SpinCo and EntIT are the proper parties, including:

- Documentation describing the Seattle Transaction and explaining that the HPE business segment that held the Accused Products was transferred to Seattle SpinCo, and that Seattle SpinCo was the surviving entity after the transaction.[4]

- Periodic financial statements published by MF plc after the Seattle Transaction stating consistently that MF plc's subsidiary Seattle SpinCo "holds the software business segment ('HPE Software') of Hewlett Packard Enterprise Company ('HPE')," which includes the ADM business and the Accused Products.[5]

- Documentation for at least one of the Accused Products, including documentation for versions of Accused Products referenced by Wapp in its complaints, identifying EntIT Software as holding the copyright to the documentation.[6]

- Documentation for at least one of the Accused Products, including documentation for versions of Accused Products referenced by Wapp in its complaints, showing that Seattle SpinCo is a warrantor for that product.[7]

- Documentation that *Wapp itself submitted* in support of the instant motion showing that Seattle SpinCo acquired ownership of the HPE software (which includes the Accused Products) after the Seattle Transaction.[8]

Despite knowledge of these uncontroverted facts, Wapp persists, without proper purpose or

evidentiary support, in its infringement assault against MF plc, a mere foreign holding company.

---

[4] *See* Agreement and Plan of Merger (D.I. 1-1 at 89–210) at 1; Separation and Distribution Agreement (D.I. 1-1 at 1–78) at 1 (cited in Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30) ¶ 20); Micro Focus Prospectus (D.I. 1-2) at 1, *available online at* https://www.sec.gov/Archives/edgar/data/1359711/000156761917001747/s001838x1_424b3 .htm#t167.

[5] Six-Month Interim Results Ending October 31, 2017 (D.I. 1-1 at 211–279) at 1; *see also* Six-Month Interim Results Ending April 30, 2018 (D.I. 1-1 at 280–332) at 31.

[6] *See* StormRunner Load Help Center (D.I. 1-3 at 1–3), *available online at* https://admhelp.microfocus.com/srl/en/2.9/Content/Resources/MasterPages/_rsc_Legal_Noti ces.htm; https://admhelp.microfocus.com/lr/en/12.56-12.57/dat/Readme1256.htm.

[7] *Id.*

[8] Seattle SpinCo-Micro Focus Merger Prospectus (D.I. 11-8) at 1 (defining "Seattle" as Seattle SpinCo, Inc.), 22 (showing that Seattle SpinCo was to own the HPE software after the merger).

Additionally, at the time it filed the Texas actions, Wapp indisputably knew of Plaintiff Seattle SpinCo's responsibility for the relevant business and Accused Products.  Specifically, in its complaints against HPE and MF plc, Wapp cited to the "Separation and Distribution Agreement" wherein HPE separated itself from the ADM business and distributed that business to Seattle SpinCo.  While Wapp attempted to distance itself from Seattle SpinCo by misrepresenting to the Texas court that the agreement was "entered between [HPE] and Micro Focus,"[9] the cover and introduction to the agreement clearly states that the agreement was between HPE and *Seattle SpinCo*—a manufacturer Plaintiff here.[10]  This blatant misrepresentation highlights Wapp's intent to, at any cost, pursue its claims against the wrong parties.

The only justification Wapp offers for suggesting MF plc—rather than Plaintiffs—is the proper accused infringer is premised upon a knowingly false inference that Wapp draws from Plaintiffs' use of the "Micro Focus" trade name for the Accused Products.  Mot. at 6–7.  Specifically, Wapp argues that because the "Micro Focus" trade name is used with the Accused Products, the Accused Products must be made by MF plc.  *See id.*  Wapp already made this misguided argument in opposition to MF plc's motion to dismiss the Texas suit.  Compare Micro Focus Texas Action, Opp. to Mot. to Dismiss (Ex. 10) at 4–7 *with* Micro Focus Texas Action, Reply ISO Mot. to Dismiss (Ex. 11) at 4–6.  As MF plc explained when Wapp previously raised this argument, Plaintiffs' use of the "Micro Focus" trade name does not implicate MF plc as owning or having any business operations concerning the Accused Products.  As stated in the sworn declaration of Philip Horner in the Texas suit, "*[a]ny business operations bearing the*

---

[9]  HPE Texas Action, Compl. (Ex. 4) ¶ 43.
[10]  Separation and Distribution Agreement (D.I. 1-1 at 1–78) at 1 (cited in Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30) ¶ 20).

*Micro Focus name are carried about by various wholly-owned subsidiaries of Micro Focus*
*International plc.*"   Horner Decl. (Ex. 1) ¶ 3 (emphasis added).   Wapp offers no evidence that
refutes this statement.   Nor does Wapp offer any evidence that contradicts Mr. Horner's sworn
statements that MF plc is a holding company that "does not develop, manufacture, market, sell,
or distribute any product or service of any nature," that MF plc "does not have any operations,
anywhere in the world, relating to the ADM line of business," and that all "operations and
ownership for the ADM line of business—including all research and development, marketing,
and sales—are by certain wholly-owned subsidiaries of Micro Focus International plc."   *Id.* ¶¶ 3,
5.

　　　None of Wapp's exhibits suggests that the allegedly infringing activity was conducted by
MF plc as opposed to a different Micro Focus entity, such as Plaintiffs.   For example, Exhibit 4
to Wapp's motion is a redacted email communication from a Micro Focus employee, Brianna
Brooks, in Plano, Texas, but there is simply nothing in the document connecting Ms. Brooks to
MF plc.[11]   Indeed, Ms. Brooks is a contractor for EntIT Software and is not employed by MF plc.
December Evans Decl. ¶ 7.   Nor does any of Wapp's other supposed evidence do anything to
link MF plc to the "Micro Focus" trade name, let alone dissociate Plaintiffs from that trade

---

[11]   That email also appears to raise questions regarding Wapp's compliance with Texas Rule of
Professional Conduct 4.02 and Delaware Rule of Professional Conduct 4.2.   That email is a
communication with Ms. Brooks responding to an inquiry by an individual whose name has
been redacted.   Given that Wapp itself appears to be a non-practicing entity whose only
business is enforcing patents, the most obvious conclusion to draw is that counsel for Wapp
or an agent for counsel reached out to Ms. Brooks about the inquiry discussed in her email.
Wapp knew as of the date of that email that HPE and Micro Focus were both represented by
counsel.

name.[12]  In sum, Wapp's attempt to attribute the Accused Products to MF plc is wholly without support.

Wapp's attempt to tie the "Micro Focus" trade name to MF plc also fails under the law. Courts in many jurisdictions have held that common usage of a trade name does not mean the actions of one entity are attributable to the actions of another.  *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007) ("[M]ere use of a trademark or logo" by a subsidiary "does not suffice to demonstrate the existence of requisite minimum contacts" of the parent); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461–62 (2d Cir. 1995) (usage of common logo insufficient to pierce veil or create agency relationship); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) (no personal jurisdiction over foreign defendant, despite common usage of trade name by foreign defendant and local subsidiary); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012) (finding that a "common marketing image and joint use of trademarked logos" fail to render a subsidiary the alter ego of its parent because it "does not demonstrate the necessary control by defendant parent over [its] subsidiaries" required to disregard the corporate form).[13]

---

[12]  The Micro Focus trademark is not even held by MF plc.  Instead, it is registered to a subsidiary, "Micro Focus IP Development LLC."  *See* Micro Focus Trademark Registration (Ex. 12) at 1–2.  Similarly, the Micro Focus website (www.microfocus.com), upon which Wapp relies so heavily, is registered to another subsidiary, "Micro Focus (IP) Limited."  *See* ICANN Registration (Ex. 13) at 1.  These facts were also made known to Wapp in the Texas briefing.  Micro Focus Texas Action, Reply ISO Mot. to Dismiss (Ex. 11) at 5.

[13]  *See also Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1301 (S.D. Cal. 2003) (common usage of a trade name not sufficient basis for establishing personal jurisdiction over parent corporation); *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) (recognizing that "common trade name and logo, without more, is not a sufficient basis for establishing personal jurisdiction"); *Price v. Waste Mgmt., Inc.*, Civil Action No. ELH-13-02535, 2014 WL 1764722, at *12 (D. Maryland Apr. 30, 2014) (subsidiary's use of

Finally, Wapp's speculation that certain unnamed subsidiaries may have assumed liabilities related to the Accused Products is wrong.  *See* Mot. at 5–6.  As Ms. Evans set forth in her October declaration, Seattle SpinCo and/or subsidiaries designated by Seattle SpinCo assumed the liabilities of HPE's transferred assets (including the ADM products).  October Evans Decl. (Ex. A) ¶¶ 10–12.  No such designations have taken place.  December Evans Decl. ¶ 6.  Thus, Seattle SpinCo has retained the liabilities associated with the Accused Products from acts occurring prior to and up to completion of the Seattle Transaction.

In short, Wapp fails to rebut Plaintiffs' assertions—and the evidence supporting those assertions—that they are responsible for the Accused Products.  Respectfully, therefore, the Court should deny Wapp's motion to dismiss for lack of subject matter jurisdiction.

**B.      This Case Should Proceed in Delaware**

**1.      The First-to-File Rule Does Not Favor the Micro Focus Texas Action**

Wapp alternatively argues that this case should be dismissed, stayed, or transferred "in light of the first-filed Micro Focus Texas action."  Mot. at 7.  However, Wapp's literal focus on the words "first filed" ignores what the first-to-file rule actually requires.  The first-to-file rule does not require blind deference to the first court in which *any* complaint was filed; instead, the rule defers to courts that first have "*possession* of the subject."  *See In re Mobile Telecommunications Techs., LLC*, 243 F. Supp. 3d 478, 483 (D. Del. 2017) (emphasis added) (citations omitted).  Thus, for example, the first-to-file rule does not require deference to the court where a case was "first-filed" if there are challenges to that court's jurisdiction.  *See*, *e.g.*,

---

common logo insufficient to confer personal jurisdiction over parent corporation); *Special Indus. Inc. v. Zamil Grp. Holding Co*., No. 4:11-CV-3207, 2013 WL 1345612, at *4 (S.D. Tex. Mar. 29, 2013), *aff'd*, 578 F. App'x 325 (5th Cir. 2014) (refusing to find personal jurisdiction over parent for actions of subsidiary because "references on its subsidiaries' websites to common systems, such as the 'Vallourec Management System,' are merely examples of a standard parent-subsidiary relationship").

*id.* at 487–88 (refusing to dismiss case under first-to-file rule where first court lacked personal jurisdiction); *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 36–37 (E.D. Pa. 1983) (refusing to dismiss case under first-to-file rule where plaintiff contended the first court lacked personal jurisdiction).

Here, the Texas court has not yet taken possession of the Micro Focus Texas action. Indeed, as noted, MF plc has filed a pending motion to dismiss for lack of personal jurisdiction, improper service, and failure to serve.  Micro Focus Texas Action, Mot. to Dismiss (Ex. 3) at 2, 9–14.  Thus, the Micro Focus Texas action is not the "first-filed" action for purposes of the first-to-file rule because the Texas court has not—and cannot—take possession of the controversy. *See In re Mobile*, 243 F. Supp. 3d at 487–88; *Jefferson Ward*, 560 F. Supp. at 36–37.

Further, the absence of identical parties between this case and the Micro Focus Texas action also weighs against dismissal of this case under the first-to-file rule.  *See In re Mobile*, 243 F. Supp. 3d at 484–85 ("the absence of an identity of parties is a factor to be considered in deciding whether to allow concurrent litigation to proceed").  The Micro Focus Texas action involves different parties than those involved here.  In that case, Wapp sued MF plc, a foreign holding company.  Micro Focus Texas Action, Mot. to Dismiss (Ex. 3) at 3; Horner Decl. (Ex. 1) ¶ 3.  By contrast, Plaintiffs here are domestic entities responsible for the development, manufacture, sale, and liabilities of the Accused Products.  (*see* § II.A, *supra*).  This is the *only* case that includes the parties responsible for the products-at-issue.

Finally, Wapp argues—again without providing any support—that if Plaintiffs are correct and Wapp indeed sued the wrong entity in the Micro Focus Texas action, "the appropriate resolution" would be to add Plaintiffs here as new defendants in the Texas case.  Mot. at 8. However, if Wapp were to amend its complaint in the Micro Focus Texas action to name

15

Plaintiffs as new defendants there (which Wapp has not yet sought to do), this case would *still* be the first-filed because Wapp's amendment of its Texas complaint would *not* relate back to its original filing date (against MF plc).  *See* Fed. R. Civ. P. 15(c)(1)(C).  In particular, and as the facts detailed above demonstrate, Wapp would not be able to show that Plaintiffs "knew or should have known that the action would have been brought against [them], but for a *mistake* concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(2) (emphasis added).  To the contrary, Wapp had every reason to know that Plaintiffs here are the proper manufacturer parties; despite that knowledge, Wapp chose to sue only MF plc for its own strategic reasons.  Compl. ¶ 22; *see also Garvin v. City of Philadelphia*, 354 F.3d 215, 221–22 (3d Cir. 2003) ("[A]n amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time.").  This is made even more evident by Wapp's attempts, as discussed, to obfuscate the proper manufacturer-defendant in its complaint against HPE, misrepresenting that the Separation and Distribution Agreement was between HPE and MF plc rather than Seattle SpinCo.[14]  This is the first-filed suit.

### 2.    This Suit Should Not Be Transferred to the Eastern District of Texas

Wapp next contends that even if the first-to-file rule does not compel dismissal of this case in favor of the Texas action (and it does not), this case should be dismissed, transferred, or stayed in favor of the Texas action because Texas is allegedly "a more convenient venue."  Mot. at 8.[15]  This argument also lacks any support and should be rejected.

---

[14]  HPE Texas Action, Compl. (Ex. 4) ¶ 43; Separation and Distribution Agreement (D.I. 1-1 at 1–78) at 1 (cited in Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30) ¶ 20).

[15]  Wapp failed to comply with Local Rule 7.1.1 in requesting nondispositive relief—transfer or stay—without meeting and conferring on these requests.

First, Wapp argues that "relevant documents" are located in the Eastern District of Texas. *Id.* But Wapp provides no evidence in support of this assertion. Wapp merely points to paragraphs 4–12 of its *complaint* in the Micro Focus Texas action. *Id.* Those paragraphs, however, do not even *allege*, let alone support with evidence, that there are any relevant documents in the Eastern District of Texas. Micro Focus Texas Action, Compl. (D.I. 1-4 at 1–30) ¶¶ 4–12. Of note and importance here, those paragraphs do show that Wapp Tech Limited Partnership and Wapp Tech Corp. both have ties to Delaware. *Id.* ¶¶ 4–5.

Second, Wapp contends that Micro Focus "hires relevant employees in Plano, Texas." Mot. at 8. In support of that assertion, Wapp relies upon a printout from the Microfocus.com website showing job listings in Plano, Texas. *Id.* However, Wapp does not tie these job listings to the Accused Products or to any other conduct relevant to this dispute, and the printout includes no such showing. *See generally* Job Search Results (D.I. 11-6). In fact, the printout does not even mention the Accused Products. Elsewhere in its briefing, Wapp claims that the individual responsible for the accused products is Archie Roboostoff (a claim that is itself unsupported). Mot. at 6. But, according to Wapp's own submission, Mr. Roboostoff is based in California—the location of Plaintiffs' principal place of business—not Texas. *See* Archie Roboostoff LinkedIn Profile (D.I. 11-9) at 1; Compl. (D.I. 1) ¶¶ 2–3.[16] Thus, if anything, Mr. Roboostoff's LinkedIn Profile demonstrates the absence of any ties between this dispute and Texas.

As a result, Wapp has failed to demonstrate that a transfer of this suit is appropriate. *See* 28 U.S.C. 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (listing the private and public factors that <u>must</u> be considered when moving to transfer on convenience

---

[16]  Indeed, nearly all of the United States-based work for the Accused Products is based outside of the Eastern District of Texas. December Evans Decl. ¶ 5.

grounds, and which Wapp ignores); *see also Rosebud LMS, Inc. v. Salesforce.com, Inc.*, C.A. No. 17-1712-CFC, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) (the *Jumara* factors must "weigh strongly in favor of transfer").

### 3. This Case Should Not Be Stayed

As a final, desperate request for relief, Wapp asks that this case be stayed pending resolution of the motions to stay in the Texas actions against Plaintiffs' end-user customers and the former manufacturer of the Accused Products. Mot. at 9. However, there is no benefit to staying this case. This case is likely to be the operative manufacturer suit. Moreover, even if the Texas court ends up denying MF plc's motion to dismiss and that case becomes the operative manufacturer suit, any discovery and other proceedings that will have taken place in this case can be carried over to that case. There would be no duplication of work.

Staying this case, by contrast, prejudices Plaintiffs because it delays resolution of the overall dispute. By suing Plaintiffs' end-user customers for alleged infringement based on Plaintiffs' products, Wapp has created a cloud of uncertainty surrounding Plaintiffs' business. That cloud will remain until this manufacturer suit is resolved. Meanwhile, the Micro Focus Texas action likely will be effectively on hold while the court there determines whether it can exercise personal jurisdiction over MF plc. *See*, *e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, (1999) ("The requirement that jurisdiction be established as a threshold matter is inflexible and without exception, . . . without jurisdiction the court cannot proceed at all in any cause") (internal citation and quotation marks omitted); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994) (during jurisdictional challenge, any permitted discovery "should be limited to only that which is necessary to determine the preliminary jurisdictional issue"); *Klayman v. Obama*, 2016 WL 5942227 (N.D. Tex. Oct. 12, 2016) ("discovery on the merits should not take place until the court has ruled on the jurisdictional issues"). Even Wapp itself

has argued that it prefers to move forward with adjudicating these cases on the merits. *See* Wells Fargo Texas Action, Mot. to Stay (Ex. 8) at 10; Bank of America Texas Action, Mot. to Stay (Ex. 9) at 10–11.

Thus, with the true manufacturers and the patentees together in one suit here, in a court where there is no legitimate dispute as to jurisdiction, there is no reason not to proceed on the merits. Wapp's requested stay of this case should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Wapp's motion.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel: (214) 698-3360

Neema Jalali
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Tel: (415) 393-8258

Andrew Robb
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5334

Dated:  December 11, 2018
6024552 / 45495

By:   */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Jennifer Penberthy Buckley (#6264)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
jbuckley@potteranderson.com

*Attorneys for Plaintiffs Seattle SpinCo, Inc. and EntIT Software LLC*